**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DORIS R. NEGRON, as Administratrix for the Estate of Wilfred Negron, Sr. and DORIS R. NEGRON, Individually | : : : | |
| Plaintiffs | : | NO. 2:08-CV-04326-NS |
| v. | : : | |
| OXFORD AIRPORT TECHNICAL SERVICES; CLYDE MACHINES, INC.; DIVERSIFIED INSPECTIONS/ITL; INTERNATIONAL ASSOCIATION OF MACHINIST AND AEROSPACE WORKERS LOCAL 1776;   and INTERNATIONAL ASSOCIATION OF MACHINIST AND AEROSPACE WORKERS a/k/a and/or d/b/a INTERNATIONAL ASSOC. OF MACHINIST AND AEROSPACE WORKERS LOCAL 1776 | : : : : : : : : : : : : : | CIVIL ACTION    JURY TRIAL DEMANDED |
| Defendants | : : | |

## ORDER

AND NOW, this          day of                        , 2008, upon consideration of Defendant, Clyde Machines, Inc.'s Motion To Dismiss**,** and Plaintiffs' Reply in Opposition thereto**,** it is hereby ORDERED, ADJUDGED and DECREED that Defendant, Clyde Machines, Inc.'s Motion To Dismiss is DENIED.

　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　**HONORABLE NORMA SHAPIRO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DORIS R. NEGRON, as Administratrix for the Estate of Wilfred Negron, Sr. and DORIS R. NEGRON, Individually | : : : | |
| Plaintiffs | : | NO. 2:08-CV-04326-NS |
| v. | : : | |
| OXFORD AIRPORT TECHNICAL SERVICES; CLYDE MACHINES, INC.; DIVERSIFIED INSPECTIONS/ITL; INTERNATIONAL ASSOCIATION OF MACHINIST AND AEROSPACE WORKERS LOCAL 1776; and INTERNATIONAL ASSOCIATION OF MACHINIST AND AEROSPACE WORKERS a/k/a and/or d/b/a INTERNATIONAL ASSOC. OF MACHINIST AND AEROSPACE WORKERS LOCAL 1776 | : : : : : : : : : : : : | CIVIL ACTION JURY TRIAL DEMANDED |
| Defendants | : : | |

**PLAINTIFFS' REPLY IN OPPOSITION TO DEFENDANT,**
**CLYDE MACHINES, INC.'S MOTION TO DISMISS**

**I.  STATEMENT OF FACTS**

On May 25, 2006 and while working at the Philadelphia Airport, Northwest Airlines employee, Wilfred Negron, Sr. (DOB: 4.25.52), used an air stairs/step unit (Model #: 15F201 1; Serial #: 44027) manufactured, sold and supplied by Clyde Machines, Inc. to perform interior cleaning on an Airbus 320 airplane. Based on records received from OSHA, the air stairs/step unit was used to access the cockpit of the airplane which in turn would permit Mr. Negron to perform his grooming duties. The Airbus was parked at a remote location and not directly at the terminal.

At some point in time, Mr. Negron attempted to disembark the plane by stepping onto the stair platform and fell off the unit onto the tarmac. Tragically, Mr. Negron's body and head violently struck the tarmac and he soon thereafter died from his injuries.

As a result of decedent's death, Doris R. Negron, the Administratrix of the Estate of Wilfred Negron, Sr., deceased filed a Civil Action in the Court of Common Pleas of Philadelphia County against those believed to be responsible for Wilfred's untimely death. Plaintiffs have asserted, *inter alia*, products liability-based claims against defendant, Clyde Machines, Inc. because it manufactured, sold and supplied the subject air stairs/step unit to Northwest Airlines.[1] *[See Plaintiffs' Complaint attached as Exhibit "A" to Clyde's Motion to Dismiss]*.

Per its Website, Clyde Machines, Inc., a wholly owned closed Minnesota corporation, manufactures and supplies aircraft ground support equipment, including but not limited to, maintenance and crew stairs. *[See Clyde Machines, Inc. Website documents attached hereto, made part hereof and marked as Exhibit "A"]*. Clyde Machines, Inc. informs on its Website that it functions to meet the needs of ground support equipment for the airline industry both **domestic** and abroad. Clyde's principal customers are most major and foreign air carriers. *[See Exhibit "A"]*.

Per Clyde Machines Motion, Northwest Airlines (NWA), a major U.S. air carrier, is a client of Clyde Machines, Inc.

Per the NWA Website, it is headquartered in Minnesota and has routes in Pennsylvania servicing Philadelphia, Pittsburgh, Harrisburg, Erie, Latrobe, Wilkes Barre, State College and Allentown. http://nwa.innosked.com/(S(wy1tijrsmvepwa55v5zeszai))/Default.aspx?show=MAP.

---

[1] Defendant, International Association of Machinist and Aerospace Workers removed this case to this Court on the basis of its belief that Plaintiffs' case involves a "federal question" – a point disputed by Plaintiffs.

NWA is situated in Terminal E of the Philadelphia Airport. NWA is one of the world's largest airlines. It is a member of SkyTeam, a global airline alliance partnership with Aeroflot, AeroMéxico, Air France, Alitalia, Continental Airlines, CSA Czech Airlines, Delta Air Lines, KLM Royal Dutch Airlines and Korean Air. NWA and its travel partners serve more than 1000 cities in excess of 160 countries on six continents. The U.S. system spans 49 states and the District of Columbia. NWA airline operates a fleet of more than 500 aircraft including Boeing 747s, and 757s, McDonnell-Douglas DC-9s and Airbus A330s, A320s and A319s. NWA also is one of the world's largest cargo airlines, operating a dedicated fleet of 14 B747 freighters. It is the only U.S. combination carrier (passenger and cargo service) to operate dedicated 747 freighters. http://www.nwa.com/corpinfo/profi/facts/. *[See Northwest Airlines Website documents attached hereto, made part hereof and marked as Exhibit "B"].*

**II.    ISSUE**

Whether this Honorable Court should dismiss Plaintiffs' claims against defendant, Clyde Machines, Inc. for lack of personal jurisdiction?

Plaintiffs' Suggested Answer:    No.

Whether defendant, Clyde Machines, Inc., a Minnesota-based manufacturer and supplier of ground support equipment for the airline industry both **domestic** and abroad, should be required to defend itself in Pennsylvania?

Plaintiffs' Suggested Answer:    Yes.

### III. LEGAL ARGUMENT

#### A. Legal Standard

A Federal Court may exercise personal Jurisdiction over a non-resident defendant to the extent permitted under a state law. F.R.C.P. Rule 4(e). Pennsylvania authorizes long-arm jurisdiction to the extent permitted by the due process clause of the United States Constitution. 42 Pa. C.S. § 5322(b). A plaintiff may prove the existence of jurisdiction over a non-resident defendant by showing either that the cause of action arose from the defendant's forum-related activities (specific jurisdiction) or that the defendant has continuous and systematic contacts with the forum state (general jurisdiction). Mellon Bank v. Di Veronica Bros., 983 5.2d 551, 554 (3rd Cir. 1993). A plaintiff may present a *prima facie* case for exercising personal jurisdiction over a non-resident defendant by establishing with reasonable particularity sufficient contacts between the defendant and the forum state. Mellon Bank (East) PSFS v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992).

Plaintiffs contend that this court has specific and general personal jurisdiction over Clyde Machines, Inc. (hereinafter referred to as "CMI"). CMI is the admitted manufacturer of the alleged defective product and has provided its products to the forum and to airlines in the United States and abroad. The subject accident occurred here in Philadelphia, and the plaintiff and her family reside here in the Philadelphia-area. None of the other defendants in this matter dispute jurisdiction. Accordingly, traditional notions of fair play and substantial justice require this court to deny defendant, CMI's Motion.

In the alternative, plaintiffs ask this Honorable court to deny the Motion without prejudice pending jurisdictional discovery. At a minimum, and based upon moving Defendant's Affidavit alone, Plaintiffs should be entitled to conduct discovery on the propriety of jurisdiction.

**B.**     **Specific Personal Jurisdiction**

When a plaintiff asserts specific personal jurisdiction over a defendant, as in this case, due process requires that the defendant have 'minimum contacts with the forum necessary for the defendant to have 'reasonably anticipated being hailed into court there. Affatato v. Hazet-Werk 2003 U.S. Dist. Lexis 21067 (E.D. Pa. 2003), *quoting*, World-Wide Volkswagen Corp. v. , 326 U.S. 310, 320, 90 L.Ed. 95 66, S. Ct. 154 (1945). The first step is mandatory, but the second step is discretionary. 149 F.3d 197 (3d Cir. 1998); Woodson 444 U.S. 286, 297, 62 L. Ed. 2d 490, 100 S. Ct. 559 1980). The required "minimum contacts must have a basis in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State thus invoking the benefits and protections of its laws.'" Asahi Metal Indus. Co., Ltd. V. Superior Ct of Cal. 480 U.S. 102, 109 94 L.Ed. 2d 92, 107 S. Ct. 1026 (1987) (O'Connor, J., plurality opinion), *quoting*, Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985).

Assuming minimum contacts have been established, in an appropriate case the court may also inquire whether "the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" Burger King, 471 U.S. at 476, *quoting*, International Shoe Co. v. WashingtonPennzoil Prods. Co v. Colelli & Assocs., Inc.,

"[A] defendant may create the minimum contacts necessary for a court to assert specific jurisdiction by placing a product into the 'stream of commerce,' which through a chain of distribution finds its way into the forum state." Pierce v. Hayward Industries, Inc. 2006 U.S. Dist. Lexis 81393 (E.D. Pa. 2006) at 7; See also Asahi at 107, Renner v. Lanard Toys Ltd.,33 F. 3d 277, 279 (3d Cir 1994).

Plaintiffs contend that this Honorable Court has specific jurisdiction over CMI under the stream of commerce test. The stream of commerce theory is appropriate in products liability cases. D'Jamoos v. Pilatus Aircraft Ltd., 2008 U.S. Dist. 35181, 12 (E.D. Pa. 2008) ("The stream of commerce theory is used in products liability cases when a product's seller has not come in direct contact with the forum state but does so through retailers, distributors and other intermediaries.") In Asahi, a plurality opinion, the Supreme Court developed three tests.

One test is whether any conduct by a defendant shows an intent to serve the market in the forum state. Asahi at 112 (O'Connor, J). A second test requires demonstration of an awareness that the final product is marketed in the forum state in the 'regular and anticipated flow of products'. Id. at 117 (Brennan. J, concurring). A third test would evaluate the volume, value and hazardous nature of the goods entering the forum state. Id. at 122 (Stevens, J. concurring).

These tests were first interpreted by this court in Renner, which declined to adopt a specific test, and they have been interpreted by this court most recently in D'Jamoos, supra. Under Justice O'Connor's test, factors that demonstrate an intent or purpose to serve the market in the forum state include designing the product for that market, advertising in the forum, establishing channels to provide regular advice to customers in the forum, or marketing the product through a distributor who has agreed to serve as a sales agent in the forum. Asahi 480 U.S. at 112.

Notwithstanding the fact that the CMI Affidavit is rather vague and silent as to many issues relating to the supply and sale of its products *[which in essence should require the outright dismissal of the relief it has requested]*, including pertinent facts pertaining to its relationship with NWA and other air carriers servicing Pennsylvania airports, CMI admits that it has sold some of its products to Pennsylvania businesses *[although it fails to identify who said*

*persons/businesses/air carriers are and it fails to discuss whether its products, although sold to air carriers headquartered outside of Pennsylvania, end up in Pennsylvania airline terminals].* Moreover, it is evident from its Website that CMI is a national and international player in the marketing, sale and supply of ground support equipment for the airline industry. *[See Exhibit "A"].* CMI admits on its Website that its principal customers are most major domestic and foreign air carriers – and CMI certainly offers no counter to the fact that NWA is one of its customers and that NWA is a major air carrier. In addition, although CMI claims it does not "solicit business in or direct its advertising toward Pennsylvania," *[despite servicing the domestic airline industry]* its Website does not state that it does not serve Pennsylvania-based companies. In fact, its Website is available for all to see and use, and visitors to the site are invited and directed to contact various sales personnel.

Based on the above facts, and construing the facts most favorably to Plaintiffs as required, CMI undoubtedly was aware that its products would make it various airline terminals in Pennsylvania regardless of whether or not a Sales Order was addressed to an airline headquartered outside of Pennsylvania. Every major domestic airline services Philadelphia and every major domestic airline uses ground support equipment. CMI's carefully crafted and vague Affidavit should not permit it to avoid addressing the claims made against it in this Honorable Court.

A defendant who has placed goods in the stream of commerce and benefits economically from the retail sale of the final product in the forum state may be subject to jurisdiction whether or not the defendant directly conducts business there. Asahi, 480 U.S. at 117. The contact must be purposeful, rather than incidental, because the stream of commerce does not refer to 'unpredictable currents or eddies. Renner, citing Asahi, 480 U.S. at 117. CMI, which sells its

products to domestic air carriers can reasonably be believed to have been fully aware that its final product would be supplied and ultimately used in a forum state, like Pennsylvania – a state having two international airports. It is unlikely that use of its product in terminals servicing Philadelphia would be a surprise, or an "unpredictable current" for CMI products. Nonetheless and if necessary, additional discovery will help distinguish between defendant's contacts in the United States as a whole and contacts in the forum. See D'Jamoos. If necessary, to meet Justice Steven's test, this Honorable Court should allow Plaintiffs to conduct additional jurisdictional discovery. It is unclear what percentage, and what volume of CMI goods are sold in and/or ultimately reach the forum. Thus, under the circumstances, jurisdictional discovery is the most reasonable alternative available, as opposed to the harsh remedy of dismissing Plaintiffs' claims altogether.

### 1. Pennsylvania's "Tort out/Harm in" theory of personal jurisdiction

Pennsylvania's long arm statute has a "tort out/harm in" provision which extends personal jurisdiction over a person who causes harm or tortuous injury in the Commonwealth by an act or omission outside of the Commonwealth. 42 Pa. Cons. Stat. § 5322(a)(4). This section applies to parties who are not within the general jurisdiction statute. *Id*. at (b). See also D'Jamoos, supra. After a court determines that section 5322(a)(4) of the long-arm statute applies, it must still determine whether due process is satisfied: Does the party have minimum contacts with the forum and would the exercise of jurisdiction comport with notions of fair play and substantial justice. Id. at 11. We cannot presume that jurisdiction is proper simply because the requirements of a long-arm statue have been met. Pennzoil, supra.

The minimum contacts question turns on the quality and nature of a defendant's activity in relation to the forum – merely fortuitous contact or a single transaction does not satisfy this

requirement. Id. at 203. Although the court has found that "mere foreseeability" that a product one sells might end up in the forum state does not render the seller amenable to suit there, this is a case of manufacturing a good – not simply selling one. Renner, supra, 33 F. 3d at 279.

In DeJames v. Magnificence Carriers, Inc,, 654 F.2d 280 (E.D. Pa. 1981), this court stated that "underlying the assumption of jurisdiction in these cases is the belief that the fairness requirements of due process *do not extend so far* as to permit a manufacturer to insulate itself from the reach of the forum State's long-arm rule by using an intermediary or by professing ignorance of the ultimate destination of its products. DeJames, 654 F.2d at 285 (emphasis added).

In the case before the court, CMI manufactured a defective product that was used in our forum, and through the business's contacts, and the contacts of its agents, a serious tort was suffered in the forum. Exercising jurisdiction over the manufacturer of the faulty product, who has used agents and/or national customers to distribute its product to the forum comports with the notions of fair play and substantial justice.

**C.      General Personal Jurisdiction**

Pursuant to Pa. C.S.A. § 5301 (2), general jurisdiction can be exercised over a corporation in Pennsylvania if the corporation: (a) is incorporated in Pennsylvania; or (b) has consented to jurisdiction; or (c) carries on a continuous or systematic part of its general business in Pennsylvania. Pierce, supra. General jurisdiction is based on a defendant's relationship with the forum rather than on the particular contacts with the plaintiff. Zombeck v. Amada Co., 2007 U.S. Dist. Lexis 84563. The stream of commerce theory, however, provides no basis for exercising *general* jurisdiction over a nonresident defendant. D'Jamoos, supra, at 28. This standard is considerably higher than that of specific jurisdiction which requires a showing of

'minimum contacts." Provident Nat. Bank v. California Fed. Sav. and Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987).

If general jurisdiction exists, the contacts between the defendant and the forum need not be specifically related to the underlying cause of action in order for an exercise of personal jurisdiction over the defendant to be proper. Pinker v. Roche Holdings Ltd., 292 F.3d at 368; see also Pennzoil Prods. 149 F.3d at 200. Courts have shown a reluctance to exercise personal jurisdiction based solely on a Website and have looked at interactivity along with other factors. Pierce at 15. There is an understandable judicial reluctance to extend the traditional limits on the exercise of personal jurisdiction over defendants based solely on a website accessible from the forum state. Whether the site is deemed not interactive enough, not targeted toward the forum state, not central to the defendant's business, or simply having no 'connexity' to the cause of action, courts have resisted asserting general jurisdiction in these circumstances." Id. at 20.

A leading case regarding personal jurisdiction based on a website is Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D. Pa. 1997), in which the district court established a sliding scale test, with personal jurisdiction found to be appropriate if a website was 'interactive' but not if the website was "passive." Much like an in-print advertising campaign, the website must either be 'central' to the defendant's business in the forum state or specifically target residents of the forum state." O'Conner v. Sandy Lane Hotel Co., 2005 U.S. Dist. LEXIS 7397, [WL] at *3, *citing*, Snyder v. Dolphin Encounters, 235 F. Supp. 2d 433, 440-41 (E.D. Pa. 2002.)) In O'Connor, the court found that the defendant hotel in Barbados was not subject to general jurisdiction in a personal injury case despite the fact that it operated a website accessible to Pennsylvania residents.

The present case can be distinguished from this case because the defendant's website – which offers information on its products, contact information, and more – deals directly with the products central to its business. It markets its products, provides information on each individual product, and claims that CMI functions to meet the needs of ground support equipment for the airline industry both **domestic** and abroad. This Website is available at all times to clients throughout the forum and is evidence that CMI purposefully availed itself of conducting activity in the forum state.

**D.**     **Policy**

In DeJames, supra, this Court stated that "underlying the assumption of jurisdiction in these cases is the belief that the fairness requirements of due process *do not extend so far* as to permit a manufacturer to insulate itself from the reach of the forum State's long-arm rule by using an intermediary or by professing ignorance of the ultimate destination of its products." DeJames, 654 F.2d at 285 (emphasis added). The central concern of a jurisdictional inquiry is the relationship among defendant, the forum and the litigation. That is, "[a] court must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." Niklaus v. Vivadent, Inc. 750 F. Supp. 693, 696 (M.D. P.A. 1990) quoting Asahi, supra.

The burden on the defendant, CMI here is not overwhelming. In CMI's sworn affidavit, the party admits to directly selling air stairs/step unit product, which led to decedent's death, to NWA. The defective product catastrophically injured a Pennsylvania resident here in Philadelphia. This injury, which happened on the tarmac of Philadelphia's international airport, is of great interest to the forum. It is greatly in Pennsylvania's interests to keep its international airports and tarmacs safe from manufacturing defects by holding manufacturers responsible. To allow them to escape liability by using Sales Orders directed to airlines outside of Pennsylvania

and then claiming ignorance as to how the product reached a terminal serviced by that airline is very much against the forum's interest.

The interests of the Plaintiffs in obtaining relief is overwhelming, and is not completely satisfied by the presence of the other parties present in the suit. This is not an indemnification claim filed by a defendant as in <u>Asahi</u>, but rather a direct cause of action filed against the admitted manufacturer of the defective product which killed the decedent, Wilfred Negron.

Considering these discussed factors, it is not in the interest of this Honorable Court to simply dismiss all claims against CMI pursuant to Fed. R. Civ. P 12 (b)(2) as demanded by defendant simply because the defendant will have to travel to a United States Court outside of Minnesota. CMI is the admitted manufacturer of the product in question, and sold directly to air carriers like NWA in the United States, who predictably used its products within the forum. The interests of the forum and the Plaintiffs overwhelm that of defendant, CMI who has availed itself through specific and general personal jurisdiction to the Eastern District of Pennsylvania.

**E.**     **<u>Discovery</u>**

The Third Circuit has clearly articulated that plaintiffs have a right to jurisdictional discovery before a defendant may be dismissed for lack of personal jurisdiction. <u>Renner</u>, <u>supra</u>. Numerous cases have sustained the right of plaintiffs to conduct discovery before the district court dismisses for lack of personal jurisdiction. <u>See</u> <u>Edmond v. United States Postal Serv. Gen Counsel</u>, 292 U.S. App. D.C. 240, 949 F.2d 415, 425 (D.C. Cir. 1991) ("As a general matter, discovery under the Federal Rules of Civil Procedure should be freely permitted, and this is no less true when discovery is directed to personal jurisdiction"); <u>Wyatt v. Kaplan,</u> 686 F.2d 276 (5th Cir. 1982) ("When a defendant challenges personal jurisdiction, courts generally permit depositions confined to the issues raised in the motion to dismiss. In an appropriate case, we will

not hesitate to reverse a dismissal for lack of personal jurisdiction, on the ground that plaintiff was improperly denied discovery."); Fraley v. Chesapeake & Ohio Ry. Co., 397 F.2d 1 (3d Cir 1968) (holding that District Court erred in refusing to direct defendant to answer interrogatories designed to illicit responses relevant to whether personal jurisdiction could be exercised over defendant.) Id.

In Renner, the District Court granted defendant's motion to dismiss on the basis of defendant's Affidavit that defendant manufactured toys in Hong Kong and sold them to independent distributors F.O.B. in Hong Kong, and that it did not sell or manufacture toys in Pennsylvania. Id. at 278. Defendant's Affidavit further alleged that defendant owned no real property in Pennsylvania, and had no employees, offices, post office boxes or bank accounts in Pennsylvania. Id. Finally, defendant's Affidavit indicated that *defendant had no exclusive distributors or any financial interest in or control over any of its distributors, and had no way of knowing or controlling where distributors marketed defendant's product.* Id. The Third Circuit nevertheless reversed the District Court's judgment, and remanded the case for jurisdictional discovery to determine (1) whether advertisements for defendants were seen or heard in Pennsylvania, (2) whether defendant designed its toys with a market in mind that included Pennsylvania, (3) how many of defendant's products were sold in Pennsylvania, and (4) whether defendant participated in toy shows that were aimed at selling toys to a multi-state market that included Pennsylvania. Id. at 283-84.

Thus far, CMI has only provided a brief Affidavit avoiding issues relevant to the relief it requests. There is evidence within CMI's Affidavit and its Website of the forum's jurisdiction. In the interest of justice, this Honorable Court should allow, at a minimum, addition time for jurisdictional discovery.

**III.    CONCLUSION**

For the foregoing reasons, Plaintiff, Doris R. Negron, the Administratrix of the Estate of Wilfred Negron, Sr., deceased requests that Clyde Machine, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction be denied.  In the alternative, Plaintiffs request that CMS's Motion to Dismiss for Lack of Personal Jurisdiction be denied without prejudice pending jurisdictional discovery.


**WHEREFORE**, Plaintiffs, Doris R. Negron, the Administratrix of the Estate of Wilfred Negron, Sr., deceased, respectfully request this Honorable Court to deny Defendant, Clyde Machines, Inc.'s Motion To Dismiss in its entirety and to enter the Order attached hereto.


                              LEVY, ANGSTREICH, FINNEY,
                              BALDANTE, RUBENSTEIN & COREN, P.C.


                              By:    /s/ R. Erick Chizmar
                                    R. ERICK CHIZMAR, ESQUIRE
                                    1616 Walnut Street
                                    5th Floor
                                    Philadelphia, PA 19103

DATE:  October 14, 2008              Attorneys for Plaintiffs

## **CERTIFICATE OF SERVICE**

I, R. Erick Chizmar, Esquire, hereby certify that a true and correct copy of the Plaintiffs' Reply in Opposition to Defendant, Clyde Machines, Inc.'s Motion To Dismiss has been served upon the following listed counsel on October 14, 2008 via first class mail.

**Maria G. Perri, Esquire**
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER, LLP
Independence Square West
The Curtis Center
Suite 1130 East
Philadelphia, PA 19106-3308

Attorney for Oxford Airport Technical Services

**Pamela Devine, Esquire**
POWELL TRACHTMAN LOGAN CARRLE & LOMBARDO
475 Allendale Road
Suite 200
King of Prussia, PA 19406

Attorney for Diversified Inspections / ITL, Inc.

**Melissa A. Montgomery, Esquire**
LAW OFFICES OF FRANSCIS R. GARTNER & ASSOC.
1500 Market Street
Suite 2920 – West Tower
Philadelphia, PA 19102-2100

Attorney for International Assoc. of Machinists & Aerospace Workers

**J. Bruce McKissock, Esquire**
**James G. Lare, Esquire**
MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN
1845 Walnut St.
18th Floor
Philadelphia, PA 19103

Attorney for Clyde Machines, Inc.

**INTERNATIONAL ASSOCIATION OF MACHINIST AND AEROSPACE WORKERS LOCAL 1776**
251 Jansen Avenue
Essington, PA  19029



                      LEVY, ANGSTREICH, FINNEY,
                      BALDANTE, RUBENSTEIN & COREN, P.C.


                    By:___/s/ R. Erick Chizmar_____
                          R. ERICK CHIZMAR, ESQUIRE
                          1616 Walnut Street
                          5th Floor
                          Philadelphia, PA 19103

DATE:  October 14, 2008            Attorneys for Plaintiffs