IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DORIS R. NEGRON, as Administrator for** | : | **CIVIL ACTION NO. 08-4326** |
| the Estate of Wilfred Negron, Sr., and | : | |
| **DORIS R. NEGRON, Individually,** | : | |
| | : | |
| v. | : | |
| | : | |
| **OXFORD AIRPORT TECHNICAL** | : | |
| **SERVICES, CLYDE MACHINES, INC.** | : | |
| **DIVERSIFIED INSPECTIONS/ITL** | : | |
| and **INTERNATIONAL ASSOCIATION OF** | : | |
| **MACHINIST AND AEROSPACE WORKERS,** | : | |
| **INTERNATIONAL ASSOCIATION OF** | : | |
| **MACHINIST AND AEROSPACE WORKERS** | : | |
| **LOCAL 1776** | : | |

**MEMORANDUM AND ORDER**

**NORMA L. SHAPIRO, J.**                                                                 **January 6, 2009**

Doris Negron, individually and as administrator of her husband's estate, filed this wrongful death and survival action in state court for claims arising from the death of her husband, Wilfred Negron, who worked for Northwest Airlines at the Philadelphia International Airport. Defendant International Association of Machinists and Aerospace Workers ("IAMAW") removed the action to federal court and moved to dismiss with prejudice. Plaintiffs did not file a motion to remand the action to state court, but requested remand in opposition to IAMAW's motion to dismiss. IAMAW's motion to dismiss will be granted and the remaining action will be remanded to state court.

**I.     BACKGROUND**

Plaintiffs allege that on May 25, 2006, Mr. Negron fell from an "air step" unit manufactured by Clyde Machines while performing grooming activities on an Airbus 320; he

died soon thereafter.  Plaintiffs claim the accident was caused in part by a dangerous defect in the air step unit.  IAMAW and Northwest are signatories to a collective-bargaining agreement covering Mr. Negron's employment ("Northwest CBA").  Mr. Negron was a member of IAMAW; plaintiffs claim it "supervised the actions of its members and/or was responsible for the safety, health and welfare of its members."  Compl. ¶ 28 (Paper no. 1, Ex. A).  Plaintiffs also claim IAMAW owed Mr. Negron a common law duty under Pennsylvania law to ensure his safety.

Plaintiffs filed[1] a civil action in state court for wrongful death, survival, negligence, gross negligence, recklessness, breach of warranty and strict liability.[2]  IAMAW, invoking original jurisdiction under 28 U.S.C. § 1331,[3] timely removed the action to this court under 28 U.S.C. § 1441(b).  In its notice of removal, IAMAW argued that "the relationship among collective bargaining parties and member employees, including the Decedent, and the duties, if any, owed by the IAMAW to the employees, including the Decedent, are governed by the Railway Labor Act (the "RLA"), 45 U.S.C. § 151, *et seq.*, and the collective bargaining agreement."  Def. Notice of Removal, p. 2 (Paper no. 1).

IAMAW filed a motion to dismiss on five grounds: (1) the state law claims are pre-empted by federal labor law; (2) federal law only imposes a duty on unions to represent its

---

[1] Plaintiffs filed a writ of summons on May 22, 2008 and a complaint on August 12, 2008 in the Philadelphia County Court of Common Pleas.

[2] In response to IAMAW's motion to dismiss, plaintiffs withdrew claims against the union for negligence, strict liability and breach of warranty.

[3] This court has original jurisdiction over all civil actions arising under federal law.  28 U.S.C. § 1331.

members fairly and plaintiffs failed to allege a breach of this duty; (3) plaintiffs' claims are barred by a six month statute of limitations; (4) IAMAW owed no duty to Mrs. Negron individually; and (5) plaintiffs failed to plead facts supporting a claim for punitive damages. Plaintiffs argue that the complaint "is based on [IAMAW's] onsite presence and conduct, action and/or inaction that was reckless, unlawful and indicative of gross negligence and/or willful and/or wanton conduct." Pl. Brief in Opposition at ¶ 12 (Paper no. 16). Plaintiffs, arguing that their state law claims are not pre-empted by the RLA, assert common law and statutory "rights and obligations that exist independent of any collective-bargaining agreement." Id.

## II. DISCUSSION

IAMAW removed this action on the ground that state law claims concerning a union's duty under a collective-bargaining agreement are pre-empted by federal labor law. Plaintiffs contend their state law claims do not arise under federal law and are actionable in state court.

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), plaintiffs must present factual allegations providing entitlement to relief. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). If plaintiffs' assertions fail to state a legally cognizable claim, defendant's motion to dismiss will be granted.

### A. Pre-Emption and Subject Matter Jurisdiction

The Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.*, governs labor relations in the airline industry and establishes "a mandatory arbitral mechanism to handle disputes growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions." Hawaiian Airlines v. Norris, 512 U.S. 246, 248 (1994). See 45 U.S.C. § 181 (extending application of the RLA to carriers by air). The mandatory arbitral

mechanism applies to "minor disputes," a term of art encompassing "controversies over the meaning of an existing collective-bargaining agreement in a particular fact situation." Id. at 253. A state law claim is pre-empted by the RLA if it "depends on the interpretation of the [collective-bargaining agreement]." Id. at 263.  To avoid pre-emption, a plaintiff must assert "substantive protections provided by state law, independent of whatever labor agreement might govern." Id. at 257, 263.  "In other words, even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for . . . pre-emption purposes." Id. at 262.

In Hawaiian Airlines, for example, the plaintiff was fired after reporting safety violations to the Federal Aviation Authority.  The plaintiff, asserting "a state-law obligation not to fire respondent in violation of public policy or in retaliation for whistle-blowing," sued the airline under the Hawaii Whistleblower Protection Act. Id. at 258.  The Supreme Court held that the claims were not pre-empted by the RLA because they could be adjudicated without reference to the collective-bargaining agreement. Id. at 262-63.  "The state tort claims . . . require[d] only the purely factual inquiry into any retaliatory motive of the employer." Id. at 266.

Here, plaintiffs characterize their claims as asserting state law protections requiring a union to ensure a safe workplace for its members.  Plaintiffs argue that their claims rely on "rights and obligations that exist independent of any collective-bargaining agreement." Pl. Brief in Opposition at ¶ 12 (Paper no. 16).  However, this characterization is inconsistent with the allegations in the complaint, which specifically invoke the protections of the collective-

4

bargaining agreement. Plaintiffs allege negligent conduct by IAMAW consisting of:

>  (oo) Failing to file appropriate grievances with NWA to protect decedent from unsafe work practices at the Philadelphia International Airport; . . .
>
>  (eee) Failing to enforce any provision of any collective-bargaining agreement and/or membership promise that would promote and/or ensure member safety.

Compl. ¶ 71 (Paper no. 1). These allegations assert a breach of the duty of fair representation that IAMAW owes its members. Steele v. Louisville & N. R. Co., 323 U.S. 192, 202 (1944). "The rights and duties of unions in carrying out their representational functions is an area where the policy of the law is so dominated by the sweep of federal statutes that legal relations which they affect must be deemed governed by federal law having its source in those statutes, rather than by local law." Bensel v. Allied Pilots Ass'n, 387 F.3d 298, 322 (3d Cir. 2004). Plaintiffs' state law claims asserting breach of the duty of fair representation are pre-empted and governed by the RLA.

Plaintiffs' alternative state law theory of relief, based on a union's alleged common law duty to ensure a safe workplace for its members, cannot be resolved without reference to the collective-bargaining agreement so it is pre-empted by federal law. "Under the common law, . . . it is the *employer*, not a labor union, that owes employees a duty to exercise reasonable care in providing a safe workplace." International Bhd. of Elec. Workers v. Hechler, 481 U.S. 851, 859 (1987) (emphasis in original). A labor union may assume contractual obligations under a collective-bargaining agreement, such as a duty of care to provide members with a safe workplace and to monitor its members' work assignments, but such contractual obligations are governed by federal law. Id. at 862.

Plaintiffs cannot avoid pre-emption by characterizing a claim to enforce contractual

5

obligations imposed by a collective-bargaining agreement as an independent state law tort. In United Steelworkers of America v. Rawson, 495 U.S. 362 (1990), legal representatives of miners who died in an underground fire sued the decedents' union in state court for negligence. The collective-bargaining agreement between the union and employer had established a joint union-management safety committee and required designees of the union to inspect the mine for safety. Id. at 364-65. The plaintiffs claimed "that members of the safety committee had failed reasonably to perform inspections of the mine or to uncover obvious and discoverable deficiencies in the mine safety program." Id. at 374. To avoid pre-emption by Section 301 of the Labor Management Relations Act (the "LMRA"), 29 U.S.C. § 185(a),[4] the plaintiffs argued that Idaho common law recognized a duty of care independent of the obligations imposed by the collective-bargaining agreement. Id. at 367. The Idaho Supreme Court, finding that the plaintiffs' claims were not pre-empted, held, "[T]he Union, having inspected, assumed a duty to use due care in inspecting and, from the duty to use due care in inspecting arose the further duty to advise the [joint union-management safety] committee of any safety problems the inspection revealed." Id.

The United States Supreme Court, reversing, held: (1) a union does not owe its members a duty of care to ensure workplace safety unless it assumed such a duty by contract; (2) contractual obligations that arise from a collective-bargaining agreement are governed exclusively by federal labor law; and (3) pre-emption by federal law cannot be avoided by

---

[4] Section 301 of the LMRA pre-empts state law claims requiring "the interpretation and application of collective-bargaining agreements." United Steelworkers, 495 U.S. at 368. The pre-emption standard under the RLA "is virtually identical to the pre-emption standard the Court employs in cases involving § 301 of the LMRA, 29 U.S.C. § 185." Hawaiian Airlines, 512 U.S. at 260.

characterizing a union's negligent performance of its contractual obligations as an independent state law tort. Id. at 371-72, 374. The Court explained:

> This is not a situation where the Union's delegates are accused of acting in a way that might violate the duty of reasonable care owed to every person in society. There is no allegation, for example, that members of the [Union's] safety committee negligently caused damage to the structure of the mine, an act what could be unreasonable irrespective of who committed it and could reasonably cause injury to any person who might possibly be in the vicinity.
>
> Nor do we understand the Supreme Court of Idaho to have held that any casual visitor in the mine would be liable for violating some duty to the miners if the visitor failed to report obvious defects to the appropriate authorities. . . .. If the Union failed to perform a duty in connection with inspection, it was a duty arising out of the collective-bargaining agreement . . .. Clearly, the enforcement of that agreement and the remedies for its breach are matters governed by federal law.

United Steelworkers, 495 U.S. at 371.

United Steelworkers controls here. Plaintiffs, asserting state law claims similar to those held to be pre-empted by the Supreme Court, argue that IAMAW knew about the dangerous working condition, failed to remedy the danger and "encouraged and/or w[as] complicit in permitting persons like decedent . . . to engage in and/or work under said dangerous and hazardous working conditions and practices."[5]  Pl. Brief in Opposition, ¶ 7 (Paper no. 16). IAMAW's alleged duty of care does not arise independently of its contractual obligations stated in the Northwest CBA; it explicitly defines IAMAW's role in maintaining workplace safety. If

---

[5] In the complaint, plaintiffs allege that IAMAW "creat[ed] a defective and/or dangerous condition(s) of which said defendants knew or, in the exercise of reasonable care, should have known existed." This allegation seems to be nothing more than a bald assertion of fact. The complaint fails to allege how IAMAW created the defect or dangerous condition. Plaintiffs' brief neither references nor expands upon this allegation. When considering facts stated in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must accept a well-pleaded complaint as true, but need not credit bald assertions of fact. Anspach v. City of Philadelphia, 503 F.3d 256, 260 (3d Cir. 2007).

IAMAW owed Mr. Negron a duty, that duty arose under the collective-bargaining agreement. The court must interpret and apply the Northwest CBA to resolve plaintiffs' claims.

Plaintiffs' reliance on Jackson v. Local Union 542, Int'l Union - Operating Eng'rs, 2000 U.S. Dist. LEXIS 10609 (E.D. Pa. July 25, 2000), is misplaced. In Jackson, which is not binding on this court, Judge Ludwig held that state law claims for intentional infliction of emotional distress against a union were pre-empted by federal labor law to the extent they were based on conduct relating to the plaintiffs' employment, but not pre-empted to the extent the claims were based on conduct unrelated to their employment. In contrast, plaintiffs' claims here are based entirely on conduct relating to Mr. Negron's employment and are therefore analogous to the claims Judge Ludwig held pre-empted in Jackson.[6]

Plaintiffs' state law claims against IAMAW are pre-empted by the RLA. Hawaiian Airlines, 512 U.S. at 263. This court has original jurisdiction under 28 U.S.C. § 1331.

### B.    Legal Sufficiency of Plaintiffs' Claims against IAMAW

Viewed in a light most favorable to plaintiffs, the court construes the complaint as asserting two causes of action against IAMAW: (1) breach of the duty of fair representation; and (2) breach of an alleged duty of care to ensure a safe workplace.

#### 1.    Duty of Fair Representation

Plaintiffs allege that IAMAW failed to file grievances with Northwest or enforce provisions of the collective-bargaining agreement relating to workplace safety. Under the RLA,

---

[6] Jackson is distinguishable on other grounds as well. In Jackson, the plaintiffs' state law claims for intentional infliction of emotional distress were based on alleged racial discrimination by the union. Here, plaintiffs argue that their state law claims rely on a union's common law duty to ensure a safe workplace, but cite no authority to show that Pennsylvania law recognizes such a duty.

a labor union owes its members a duty of fair representation.  Steele, 323 U.S. at 202.  "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith."  Vaca v. Sipes, 386 U.S. 171, 190 (1967); Ahmad v. UPS, 281 Fed. Appx. 102, 105 (3d Cir. 2008).  "Exhaustion of internal union remedies is a necessary requirement to a complaint against a union for breach of the duty of fair representation" under the RLA.  Goclowski v. Penn Cent. Transp. Co., 571 F.2d 747, 757 (3d Cir. 1977).  However, "exhaustion of internal union remedies may be excused when such attempts would be futile."  Id. at 758.

Plaintiffs do not allege they have pursued internal union remedies or that such attempts would have been futile.  Plaintiffs have failed to plead an essential element of a claim for breach of the duty of fair representation.   This claim will be dismissed with prejudice.

### 2.     Duty of Care to Ensure a Safe Workplace

Plaintiffs claim IAMAW breached a duty of care a union owes its members to maintain a safe workplace, but cite no authority for the proposition that Pennsylvania law recognizes such a duty.  We do not think plaintiffs' action against IAMAW would be cognizable in state court, but since the claims are pre-empted by the RLA, we consider whether federal labor law imposes the duty on which plaintiffs rely.

A labor union may contractually assume greater responsibility for its members beyond the duty of fair representation, and may do so through a collective-bargaining agreement to which only the union and employer are signatories.  United Steelworkers, 495 U.S. at 374.  However, "[i]f an employee claims that a union owes him a more far-reaching duty, he must be able to point to language in the collective-bargaining agreement specifically indicating an intent to create

9

obligations enforceable against the union by the individual employees." Id. "The threshold inquiry for determining if a cause of action exists is an examination of the contract to ascertain what duties were accepted by each of the parties and the scope of those duties." Hechler, 481 U.S. at 860.

Plaintiffs, characterizing their claims against IAMAW under the law of torts rather than contracts, have done exactly the opposite of what the law requires. Plaintiffs explicitly disclaim reliance on the collective-bargaining agreement:

> Plaintiffs contends [sic] that the root of the Estate's claims are [sic] independent of the [Northwest] CBA. Plaintiff-Administratrix, on behalf of the Estate, has filed [sic] Wrongful Death Act claim pursuant to 42 Pa. C.S.A. § 8301(a) and [sic] corresponding Pennsylvania Survival Action by virtue of 20 Pa. Cons. Stat. 3373 and 42 Pa. Cons. Stat. § 8302. Moreover, Plaintiffs' claims are additionally grounded in the common law principles pertaining to gross negligence, recklessness, and wanton and willful conduct - causes of action not requiring the interpretation of any CBA. In short, Plaintiffs' claims are grounded in rights and obligations that exist independent of any collective-bargaining agreement and Plaintiffs' claims should not be deemed pre-empted by the RLA as asserted by Defendant, [IAMAW].

Pl. Brief in Opposition at ¶ 12 (Paper no. 16). But IAMAW could only have owed Mr. Negron a duty of care beyond the duty of fair representation had it contractually assumed such a duty. United Steelworkers, 495 U.S. at 374. If, as plaintiffs argue, their claims are independent of "any collective-bargaining agreement," the claims would not be cognizable. However, the complaint actually alleges IAMAW failed to enforce provisions of the Northwest CBA relating to safety. Compl. ¶ 71 (eee).[7] But plaintiffs are not entitled to relief because the Northwest CBA does not

---

[7] In the same sentence of the complaint, plaintiffs allege that IAMAW failed to enforce a "membership promise that would promote and/or ensure member safety." Compl. ¶ 71(eee). The complaint fails to describe or include the terms of the alleged promise or any further detail that might support plaintiff's right to enforce the alleged promise. Plaintiffs' brief neither references nor expands upon this allegation and argues that the claims rely on rights other than

create individual rights enforceable against IAMAW by its members.  In United Steelworkers, the collective-bargaining agreement provided for a joint union-management safety committee and allowed individuals designated by the union to participate in mine inspections.  The Supreme Court, observing that "the agreement gives no indication that these obligations, if such is what they are, may be enforced by an individual employee," held that the safety provisions were not promises enforceable by employees against their union, but rather "concessions made by the employer to the Union, a limited surrender of the employer's exclusive authority over mine safety."  Id. at 375.

> The Court explained:
>
> Applying this principle to the case at hand, we are quite sure that respondents may not maintain a § 301 suit against the Union.  Nothing in the collective-bargaining agreement suggests that it creates rights directly enforceable by the individual employees against the Union.  The pertinent part of the collective-bargaining agreement, Article IX, consists entirely of agreements between the Union and the employer and enforceable only by them.  Section 2 of the Article provides that "a committee consisting of two (2) supervisory personnel and two (2) reliable employees, approved by the Union, shall inspect" the mine if an employee complains to the shift boss that he is being forced to work in unusually unsafe conditions but receives no redress, but even if this section might be interpreted as obliging the Union to inspect the mine in such circumstances, the promise is not one specifically made to, or enforceable by, individual employees. Nor have respondents placed anything in the record indicating that any such complaints were made or that the Union failed to act on them. Section 4 of the Article states that a Union member may accompany the state mine safety inspection team on its inspections of the mine, and Section 5 states that a Union designate and the Safety Engineer "shall make a tour of a section of the mine" once each month, but again the agreement gives no indication that these obligations, if such is what they are, may be enforced by an individual employee.

United Steelworkers, 495 U.S. at 374-75 (internal citations omitted).

---

the common law of contracts.  The court need not credit this unsupported assertion of fact.  Anspach, 503 F.3d at 260.

The Northwest CBA is indistinguishable from the agreement considered in <u>United Steelworkers</u> in all relevant respects. Article 16.C of the Northwest CBA provides for the establishment of a joint union-management "occupational safety and health committee" composed of "an equal number of employee representatives and Company representatives."

Article 16.D provides:

> The duty of the committee will be to see that all applicable state and municipal safety and sanitary regulations (including smoke-free workplace regulations) are complied with, to make recommendations for the maintenance of proper standards and to promote compliance by employees and supervisory personnel with safety rules and regulations.  The committee shall receive and investigate complaints regarding unsafe and unsanitary working conditions, report noncompliance with safety rules and regulations and shall make written recommendations concerning such complaints or violations and shall follow up on such recommendations.

Article 16.E provides:

> Employees will be neither required nor permitted to use unsafe tools or equipment or disciplined for refusal to use same.  However, employees will be responsible for promptly reporting unsafe and inoperative tools or equipment so that repairs or corrections can be expedited.  If a piece of equipment has been properly tagged to indicate that it is unsafe and should not be used or operated, it shall be withdrawn from service until proper repairs are made and the tag is removed and signed off by the person responsible for making the repair.  The Company shall furnish all necessary safety devices, including noise suppressors where employees are subjected to excessive jet noise, and also shall furnish protective clothing for employees required to work with acids or chemicals that are injurious to regular clothing.  Employees will be required to use or wear such devices or clothing as may be furnished and failure to do so may result in disciplinary action.

Def. Suppl. Ex. and Mem., Exhibit A (Paper no. 26).

The Northwest CBA contains no language stating or implying that individual employees may enforce obligations assumed by IAMAW under the collective-bargaining agreement. Section 16.D of the agreement states that the joint union-management committee will have the "duty . . . to see that all applicable state and municipal safety and sanitary regulations (including

smoke-free workplace regulations) are complied with," but does not grant individual employees the right to enforce this duty. Section 16.D also states that "[t]he committee shall receive and investigate complaints regarding unsanitary working conditions," but plaintiffs do not allege that the committee received any such complaints. In the absence of language specifically indicating an intent to create obligations enforceable against the union by individual employees, there is no cause of action to enforce a union's alleged duty of care to ensure a safe workplace for its members. Plaintiffs are not entitled to relief on their claims against IAMAW for breach of the alleged common law duty to ensure a safe workplace. This claim will be dismissed with prejudice.

        **C.    Jurisdiction Over Remaining State Law Claims**

Since plaintiffs' federal claims will be dismissed, the court must consider whether it has subject matter jurisdiction over the remaining state law claims. In any civil action of which the court has original jurisdiction, the court has supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The court may decline to exercise supplemental jurisdiction over a claim if the court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3).

The only claims over which this court has original jurisdiction will be dismissed. The court declines to exercise supplemental jurisdiction over the remaining state law claims.

**III.    CONCLUSION**

Plaintiffs' state law claims against IAMAW arise under federal labor law and are pre-empted by the Railway Labor Act. Plaintiffs' action against IAMAW fails to state a cognizable

13

claim. IAMAW's motion to dismiss with prejudice will be granted and the remainder of this action will be remanded to state court. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DORIS R. NEGRON, as Administrator for** : | **CIVIL ACTION NO. 08-4326** |
| **the Estate of Wilfred Negron, Sr., and** : | |
| **DORIS R. NEGRON, Individually,** : | |
| : | |
| v. : | |
| : | |
| **OXFORD AIRPORT TECHNICAL** : | |
| **SERVICES, CLYDE MACHINES, INC.** : | |
| **DIVERSIFIED INSPECTIONS/ITL** : | |
| **and INTERNATIONAL ASSOCIATION OF** : | |
| **MACHINIST AND AEROSPACE WORKERS,** : | |
| **INTERNATIONAL ASSOCIATION OF** : | |
| **MACHINIST AND AEROSPACE WORKERS** : | |
| **LOCAL 1776** : | |

**ORDER**

AND NOW, this 6th day of January, 2009, upon consideration of Defendant International Association of Machinist and Aerospace Workers' motion to dismiss (paper no. 13) and Plaintiff's response thereto, it is **ORDERED** that:

1. Defendant's motion (paper no. 13) is **GRANTED** for the reasons stated in the attached memorandum.

2. The action against Defendant International Association of Machinist and Aerospace Workers is **DISMISSED WITH PREJUDICE**.

3. The action is **REMANDED** to the Philadelphia County Court of Common Pleas.

4. All other pending motions will be **DENIED WITHOUT PREJUDICE**.

5. The Clerk of Court shall mark this action **CLOSED** for statistical purposes.

                                        /s/ Norma L. Shapiro
                                                            J.